UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| DISABILITY SUPPORT ALLIANCE, on behalf of its members; and ZACH HILLESHEIM, <br><br> *Plaintiffs*, <br><br> v. <br><br> EL RANCHO #2 CORP.; and MARIA LEON <br><br> *Defendants*. | Case No. 0:14-cv-03345 <br><br> **COMPLAINT** <br><br> **Injunctive Relief Sought** |

Plaintiffs Disability Support Alliance and Zach Hillesheim, by and through the undersigned counsel, bring this action against Defendants El Rancho #2 Corp., a Minnesota Business Corporation and Maria Leon, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and for violations of the Minnesota Human Rights Act, Minn. Stat. Chapter 363A (the "MHRA"), and allege as follows:

**INTRODUCTION**

1. Plaintiffs bring this civil rights action against Defendants for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, persons with disabilities. Defendants' violations discriminate against the members of Disability Support Alliance and Plaintiff Hillesheim on the basis of their respective disabilities. Defend-

- 1 -

ants have failed to remove architectural barriers at the bar and restaurant commonly known as "El Rancho", located at 1419 East College Drive, Marshall, MN 56258, which prevent and/or limit the full and equal use of the boutique to persons with disabilities, even though such barrier removal is readily achievable.

2.  Defendants' failure to provide equal access to "El Rancho" violates the mandates of the ADA and the MHRA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

3.  Defendants' conduct constitutes an ongoing and continuous violation of the law.

4.  Accordingly, Plaintiffs seek a declaration that Defendants' facilities violate federal law and an injunction requiring Defendants to make reasonable modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities. Plaintiffs further request that the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendants continue to comply with the relevant requirements of the ADA and MHRA.

**JURISDICTION AND VENUE**

5.  Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343(a)(3). This action includes federal law claims brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189. The Court may exercise supplemental jurisdiction over Plaintiffs' nonfederal law cause of action, violations of the Minnesota Human Rights Act, Minn. Stat.

Chapter 363A, because the claims asserted in this action arise from a common nucleus of operative fact. The Court has the jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57.

6. Venue in this judicial district is proper because Defendants are located and transact business within this judicial district and have sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

7. Plaintiff Disability Support Alliance is a Minnesota nonprofit corporation organized on July 3, 2014 under Chapter 317A of the Minnesota Statutes. Each member of the Disability Support Alliance is a person with a disability who is recognized as a protected class under federal and state law. The purpose of the Disability Support Alliance is to "eliminate discrimination on the basis of disability" and "promote the better of the lives of those living with disabilities." Disability Support Alliance's members have long been actively promoting the Disability Support Alliance's organizational mission in their individual capacities and are continuing their efforts through the Disability Support Alliance. Disability Support Alliance's members live in Minnesota.

8. Plaintiff Zach Hillesheim is a resident of the city of Marshall, Minnesota. Plaintiff Hillesheim suffers from, and all times relevant hereto has suffered from, a legal disability as defined by the ADA, 42 U.S.C. § 12102(2), and as defined by the MHRA, Minn. Stat. 363A.03, Subd. 12.

Plaintiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq.*, and under the MHRA.

9. Plaintiff Hillesheim was paralyzed as an infant while undergoing surgery to address a congenital heart defect. During the surgery his spine was severed, paralyzing him below the waist. Mr. Hillesheim cannot walk and uses a wheelchair for mobility. He has no feeling in his legs and cannot sense temperature. As a person with a disability, Mr. Hillesheim has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

10. Defendant El Rancho #2 Corp. is a Minnesota business corporation with its principal place of business at 1419 East College Drive, Marshall, MN 56258. Defendant El Rancho #2 Corp. is the lessee and/or operator of the real property and improvements which are the subject of this action, "El Rancho", a place of public accommodation within the meaning of the ADA and MHRA, also located at the street address of 1419 East College Drive, Marshall, MN 56258.

11. Defendant Maria Leon is the owner and/or lessor of the real property and improvements which are the subject of this action: a building located at the street address of 1419 East College Drive, Marshall, MN 56258.

## FACTUAL BACKGROUND

12. On or around August 4, 2014, Plaintiff Hillesheim visited the "El Rancho" bar and restaurant, which is located approximately 1.6 miles from his apartment, to eat dinner with another Disability Support Alliance member. Plaintiff Hillesheim was driving his car.

13. When he arrived at "El Rancho", Plaintiff Hillesheim drove his car into the parking lot at the rear entrance of the restaurant. The parking lot had two parking spots marked as accessible. The spots are next to one another and share an access lane. Each spot also has its own access lane on the side opposite to the shared access lane.

14. The left parking spot was inaccessible. The access lane on its left side was blocked by a car parked in the lane. The access lane on its right side was blocked by a trailer parked in the lane. The trailer also partially obstructed the left parking spot. This parking spot was inaccessible to Plaintiff Hillesheim. The process of deploying a wheelchair from a car requires an access lane, but the left and right access lanes were blocked by the car and trailer, respectively.

15. The right parking spot was also inaccessible. The access lane on its left side was blocked by the trailer referenced in the prior paragraph. This parking spot was inaccessible to Plaintiff Hillesheim because the process of deploying a wheelchair from a car requires an access lane, but the driver's side access lane was blocked by the trailer.

16. Upon encountering these circumstances, Plaintiff Hillesheim called the restaurant's phone number, which was posted on a sign in the parking lot advertising "El Rancho's" catering services.

17. Plaintiff Hillesheim's call was answered by a female "El Rancho" employee. Plaintiff Hillesheim asked to speak to a manager and was informed that the employee had the authority to speak for the restaurant.

18. Plaintiff Hillesheim asked the employee if she could have someone move the trailer or car from the access lanes in the accessible parking spots.

19. The employee informed Plaintiff Hillesheim that she did not see what the problem was and recommended that Plaintiff Hillesheim park in a spot on the side of the building since the wheelchair ramp adjacent to the parking lot was unusable anyways.

20. Plaintiff Hillesheim indicated that he was not going to park in an inaccessible parking spot due to his concern that another car could come along and park next to his, thus preventing Plaintiff Hillesheim from accessing his car.

21. The employee refused to take action on Plaintiff Hillesheim's request. Plaintiff Hillesheim informed the employee that he intended to call the police to seek their assistance. The employee invited Plaintiff Hillesheim to do whatever he felt was necessary.

22. Plaintiff Hillesheim called the police. While he was on the phone with the dispatch operator, two males exited the restaurant. One of the males approached Plaintiff Hillesheim's car, which was still in the "El Rancho"

parking lot, and started pounding on the driver's side window and yelling at Plaintiff Hillesheim.

23. Plaintiff Hillesheim decided to exit the "El Rancho" parking lot and parked his car on the street to wait for a police officer to arrive.

24. Officer Kruk responded to Plaintiff Hillesheim's call. After speaking with Plaintiff Hillesheim, Officer Kruk proceeded to speak with the men in the parking lot.

25. One of the men moved the car that was blocking the left access lane to the left parking spot.

26. Officer Kruk returned to Plaintiff Hillesheim's car, and advised him to give the people at "El Rancho" a little bit of time to cool off before returning to the restaurant.

27. On August 18, 2014, Plaintiff Hillesheim returned to "El Rancho" accompanied by another member of the Disability Support Alliance.

28. "El Rancho" has three entrances: a front entrance, a side entrance and a back entrance.

29. The front entrance to "El Rancho" features two steps. Each step is approximately four to six inches.

30. The back entrance features a ramp, but the ramp is ineffective for wheelchair access because the hallway it leads to contains stairs. The ramp also fails to comply with the requirements of the ADAAG.

31. The side entrance features a sloped entryway that exceeds the ADAAG's maximum slope.

32. Unable to access the front or back entrance, Plaintiff Hillesheim attempted to access the side entrance. After he entered the exterior door, he encountered an entryway with a slope and an interior door at the top of the slope. The slope was steep, which required Plaintiff Hillesheim to exert himself disproportionately. When he reached the top of the slope, Plaintiff Hillesheim was forced to turn his wheelchair sideways in order to avoid rolling backwards while he opened the interior door.

33. After some maneuvering, Plaintiff Hillesheim finally managed to enter "El Rancho". Plaintiff Hillesheim purchased lemonade for himself, another member of the Disability Support Alliance who was unable to enter the premises and a third-party.

34. Plaintiff Hillesheim also visited the restrooms. The restrooms were inaccessible to a person in a wheelchair because the "accessible" stall is too narrow, the sink had uninsulated pipes and other amenities were inaccessibly high.

35. In light of the architectural barriers at "El Rancho", Plaintiff Hillesheim and another member of Disability Support Alliance, are deterred from visiting "El Rancho" in the future. Plaintiff Hillesheim and other Disability Support Alliance members would like to be able to patronize "El Rancho", but the architectural barriers deter them from doing so. They would like to return and patronize "El Rancho" when they learn that the premises have been made fully accessible to persons who wheelchairs for mobility.

36. Plaintiff Hillesheim and members of the Disability Support Alliance attempted to access Defendants' premises, but could not do so inde-

pendently on a full and equal basis because of their disabilities, due to the physical barriers to access and violations of the ADA and MHRA that exist at Defendants' premises. As a result of Defendants' non-compliance with the ADA and MHRA, Plaintiff Hillesheim and members of the Disability Support Alliance, unlike persons without disabilities, cannot independently access the facilities and/or are excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

37. On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

   a. Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

   b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

   c. Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

    d. Individuals with disabilities continually encounter various forms of discrimination; and

    e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

    38. Congress explicitly stated that the purpose of the ADA was to:

    a. Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

    b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

    c. Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

    39. Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public accommodation to comply with ADA standards and to be readily accessible to,

and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

40. The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

41. Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

42. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

43. In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise the 1991 ADAAG.

44. The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

45. On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

46. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

47. The extended process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

**FACTUAL ALLEGATIONS**

48. Defendants have discriminated against Plaintiff Hillesheim and members of the Disability Support Alliance on the basis of their disabilities by failing to comply with the requirements of the ADA, the ADAAG, and the MHRA with regard to "El Rancho". A specific, though not exclusive, list of unlawful physical barriers and ADA violations present at "El Rancho" which limit the ability of persons in wheelchairs to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

    a. There is not an accessible entrance to "El Rancho" in violation of ADAAG 206.4 and 404. The side entrance features a ramp with a slope in excess of 1:12 in violation of ADAAG 405.

    b. The parking spaces marked as accessible do not have unobstructed access aisles in violation of ADAAG 502.

    c. The wheelchair accessible compartments in the restroom are less than 60 inches wide minimum in violation of ADAAG 604.8.

    d. The sink in the restroom contains exposed pipes and are not otherwise configured to protect against contact in violation of ADAAG 606.6.

49.    The above listing is not to be considered all-inclusive of the barriers and violations of the ADA and MHRA encountered by Plaintiffs or which exist at "El Rancho."

50.    In order to fully remedy the discriminatory conditions, Plaintiffs require an inspection of "El Rancho," in order to photograph and measure all such barriers to access and violations of the ADA, ADAAG, and MHRA.

51.    Compliance with the ADA standards, the ADAAG, and the MHRA is readily achievable by Defendants due to the lack of difficulty and low cost of remedying the above-listed barriers. Many of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable."

52.    Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or

with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. *See* ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

53. As a person with a disability, Plaintiff Hillesheim has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein. As an organization devoted to reducing discrimination against persons with disabilities, and whose members have been directly impacted by the discriminatory conditions at "El Rancho", Disability Support Alliance has an interest in remediating the barriers at the subject premises.

54. Plaintiff Hillesheim and members of the Disability Support Alliance intend to visit the "El Rancho" again in the near future, both to ascertain whether the restaurant remains in violation of the ADA and/or MHRA, and to attempt to patronize the restaurant on a full, equal, and independent basis. "El Rancho" is located approximately 1.6 miles from the residences of Plaintiff Hillesheim and another member of the Disability Support Alliance.

55. Without injunctive relief, Defendants' failure to remove accessibility barriers will continue to cause injury to Plaintiffs, who will continue to be unable to independently access "El Rancho" and/or to enjoy the goods, ser-

vices, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of their rights under the ADA and MHRA.

## FIRST CAUSE OF ACTION
**Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101** *et seq.*

56. Plaintiffs incorporate and reallege the above paragraphs.

57. Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

58. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

59. Defendants have discriminated against Plaintiffs and others in that they failed to make their place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder, including the ADAAG, as described above. Plaintiff Hillesheim and Disability Support Alliance members have been denied full and equal access to "El Rancho" and/or has been denied the opportunity to participate in or benefit from the goods,

services, facilities, privileges, advantages, or accommodations on a full and equal basis.

60. Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. Defendants' violations of the ADA and ADAAG are ongoing.

61. Defendants failed to remove architectural barriers to full and equal access by Plaintiff Hillesheim and other members of Disability Support Alliance, even though compliance would have been readily achievable. Removal of the architectural barriers would neither fundamentally alter the nature of the business nor result in an undue burden to Defendants.

62. Plaintiff Hillesheim and other members of Disability Support Alliance plan to visit "El Rancho" again in the near future. Plaintiffs are without adequate remedy at law, have suffered and are suffering irreparable harm, and reasonably anticipates that they will continue to suffer irreparable harm upon their planned return visit to "El Rancho" unless and until Defendants are required to remove the physical barriers to access and ADA violations that exist at Defendants' place of public accommodation, including those set forth specifically herein.

63. This Court has authority under 42 U.S.C. § 12188 to grant Plaintiffs injunctive relief, including an order requiring Defendants to make "El Rancho" readily accessible to and independently usable by individuals with disabilities to the extent required by the ADA and ADAAG, and/or to close "El Rancho" until such time as Defendants cure the access barriers.

64. Plaintiffs have retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendants, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

## SECOND CAUSE OF ACTION
### Violations of the Minnesota Human Rights Act, Minn. Stat. Chapter 363A

65. Plaintiffs incorporate and reallege the above paragraphs.

66. Minn. Stat. 363A.11 provides:

   It is an unfair discriminatory practice:

   (1) to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of […] disability […]; or

   (2) for a place of public accommodation not to make reasonable accommodation to the known physical, sensory, or mental disability of a disabled person.

67. Under the general prohibitions established by the MHRA, Minn. Stat. 363A.11, Subd. 2, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

68. Defendants have engaged in unfair discriminatory practices against Plaintiffs and others in that they have failed to make their place of public accommodation fully accessible to persons with disabilities on a full and equal basis. The acts herein constitute violations of the MHRA, 363A.11.

Plaintiffs have been denied full and equal access to "El Rancho", and/or has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations offered therein on a full and equal basis.

69.     Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. Defendants' violations of the MHRA are ongoing.

70.     Defendants have failed to remove architectural barriers to full and equal access by Plaintiffs and other persons with disabilities, even though compliance would have been readily achievable. Removal of the architectural barriers would neither fundamentally alter the nature of the business nor result in an undue burden to Defendants.

71.     Plaintiff Hillesheim and other members of Disability Support Alliance specifically plan to visit "El Rancho" again in the immediate future. Plaintiffs are without adequate remedy at law, have suffered and are suffering irreparable harm, and reasonably anticipate that they will continue to suffer irreparable harm upon their planned return visit to "El Rancho", unless and until Defendants are required to remove the physical barriers to access and MHRA violations that exist at Defendants' place of public accommodation, including those set forth specifically herein.

72.     This Court has authority under Minn. Stat. 363A.33, Subd. 6, and Minn. Stat. 363A.29, Subd. 3–4, to issue an order directing Defendants to cease and desist from its unfair discriminatory practices and to take affirmative action to make their facilities readily accessible to and independently us-

able by individuals with disabilities. The Court furthermore has authority under these statutory provisions of the MHRA to order Defendants to pay a civil penalty to the state.

73. Plaintiffs have retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees from Defendants as part of the costs, pursuant to Minn. Stat. 363A.33, Subd. 7

**WHEREFORE**, Plaintiffs respectfully request:

a. That the Court issue a Declaratory Judgment that determines that Defendant's facilities, at the commencement of the instant suit, are in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations including the ADAAG, and that Defendants' conduct and/or inaction constitutes an unfair discriminatory practice under the MHRA.

b. That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2), 28 C.F.R. § 36.504(a), Minn. Stat. 363A.33, Subd. 6, and Minn. Stat. 363A.29, Subd. 3, enjoining Defendants from continuing their discriminatory practices; including an order directing Defendants to make all readily achievable alterations to its facilities so as to remove physical barriers to access and make its facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the

  ADA and the MHRA; and also including an order requiring Defendants to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

c. That the Court order Defendants to pay a civil penalty to the state pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4.

d. That the Court award Plaintiffs their reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505, and Minn. Stat. 363A.33, Subd. 7, or as otherwise provided by law; and

e. That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA or the MHRA.

         Respectfully submitted,

DATED: <u>September 3, 2014</u>

         <u>/s/ Paul Hansmeier</u>
         Paul R. Hansmeier (MN Bar # 387795)
         CLASS JUSTICE PLLC
         100 South Fifth Street, Suite 1900
         Minneapolis, MN 55402
         E-mail: mail@classjustice.org
         Phone: (612) 326-9801